EUGENE G. BERTINO AND SUSAN M. BERTINO, PETITIONERS *V.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5070–78.     Filed November 18, 1980. -

Eugene G. Bertino, pro se.
*Wayne R. Appleman,* for the respondent.

GOFFE, *Judge:* The Commissioner determined a deficiency of $2,074.55 in the petitioners' Federal income tax for their taxable year 1975. The only issue we decide is whether petitioners commenced construction on their residence prior to March 26, 1975, thus qualifying for the credit for the purchase of a new principal residence provided by section 44 of the Internal Revenue Code of 1954.[1]

### FINDINGS OF FACT

Petitioners filed their joint 1975 income tax return with the Internal Revenue Service Center, Ogden, Utah. At the time they filed their petition in this proceeding, they resided in Federal Way, Wash.

In September 1973, petitioners purchased a lot in Federal Way, Wash., on which they planned to build a new home. The lot is situated on a bluff overlooking Puget Sound. From the street on the east side, the lot slopes down to a creek which cuts diagonally from southeast to northwest across it. The banks of the creek are very steep, forming what might be called a small ravine. On the north side of the lot is the adjoining landowner's wooden picket fence.

Because of the lot's location, there was a significant amount of

---

[1]All section references are to the Internal Revenue Code of 1954 as amended.

subsurface water drainage. Due to the heavy rains in the Pacific Northwest, subsurface water continually percolates through the ground to the ocean and to waters which flow into it. The petitioners' lot was near the bottom of the bluff and hence experienced substantial drainage of this sort. To prevent the basement of their future home from being continually flooded, petitioners (who constructed the house themselves) diverted this subsurface flow by digging "French drains." A French drain is basically a trench excavated down to "hard pan," which is material so densely packed together that water will not penetrate it. A small amount of sand and gravel is spread on the bottom of the trench, over which is laid "tile," which is really 4-inch perforated plastic pipe. Over the tile is placed "felt" which removes silt from water passing through the loose gravel used to fill in the trench. The felt is necessary to prevent the tile from clogging. From a common point of origin the drains were extended at approximately a right angle to two different points on the creek flowing across the lot. One drain ran under what was to be the north side of the house which, for a certain distance, was to be only 5 feet from the adjoining landowner's fence. The drains were completed in September and October of 1974. Construction of the house and garage did not begin until June 1975.

The French drains were built before the house and garage because the equipment needed to dig the trenches (backhoes) would not have been able to gain access to the 5-foot-wide area between the house and north property line.

During November and December of 1974, petitioners purchased 28 tons of rock which they placed on the creek bank and adjacent slope nearest to the future site of the house in order to prevent soil erosion by the creek, which constantly deepens its bed and causes the banks and nearby slopes to slough off and fall into it. The rocks were necessary because the only feasible area on which to place the house was at the edge of this steep slope leading down to the creek. The rocks had to be laid prior to construction of the house because they could not have been transported over the creek and up the creekbank and slope from the far side of the creek.

The petitioners completed and occupied the house in 1975. On their 1975 Federal income tax return they claimed a credit of

$2,000 pursuant to section 44. In his statutory notice, the Commissioner disallowed the credit.

## OPINION

The relevant legal provisions are contained entirely within the Internal Revenue Code of 1954 and Income Tax Regulations implementing it, the pertinent parts of which provide as follows:

SEC. 44. PURCHASE OF NEW PRINCIPAL RESIDENCE.

(a) GENERAL RULE.— In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer.

> \*     \*     \*     \*     \*     \*     \*

(e) PROPERTY TO WHICH SECTION APPLIES.—

(1) IN GENERAL.— The provisions of this section apply to a new principal residence—

(A) the construction of which began before March 26, 1975, [and]

(B) which is acquired and occupied by the taxpayer after March 12, 1975, and before January 1, 1977 \* \* \*

Sec. 1.44–2 Property to which credit for purchase of new principal residence applies.

> \*     \*     \*     \*     \*     \*     \*

(a) *Construction.* The construction of the residence must have begun before March 26, 1975. For this purpose construction is considered to have commenced in the following circumstances:

(1)(i) \* \* \* construction is considered to commence when actual physical work of a significant amount has occurred on the building site of the residence. A significant amount of construction requires more than drilling to determine soil conditions, preparation of an architect's sketches, securing of a building permit, or grading of the land. Land preparation and improvements such as the clearing and grading (excavation or filling), construction of roads and sidewalks, and installation of sewers and utilities are not considered commencement of construction \* \* \*. However, driving pilings for the foundation, digging of the footings, excavation of the building foundation, pouring of floor slabs, or construction of compacted earthen pads when specifically prepared and designed for a particular residential structure and not merely as a part of the overall land preparation, constitute a significant amount of construction of the residence. \* \* \*

(ii) The rules in subdivision (i) \* \* \* are illustrated by the following examples:

> \*     \*     \*     \*     \*     \*     \*

*Example (2).* A location chosen for a housing development has swampy and marshy terrain. In order to make the location suitable for development the builder utilizes large quantities of fill. This activity constitutes land preparation \* \* \* not \* \* \* commencement of construction.

*Example (3).* Assume the same facts as in * * * example (2) except that the builder also constructs an eathern pad of compacted fill specifically prepared for a particular residential structure and not merely as a part of the overall land preparation. Construction of the * * * pad * * * constitutes commencement of construction.

Respondent argues that the construction of the French drains and placement of the rocks were mere "land preparation" and not commencement of construction, which in his view did not occur until June 1975, after the cutoff date of March 26, 1975. We disagree. We consider that the construction of the drains is far more analogous to the excavation of a basement or the fabrication of an earthen pad than to mere overall land preparation. The distinction the regulation attempts to make arises in the context of a multi-unit housing development. Construction activities which are attributable to the entire development, such as installation of sewer systems, roads, curbs, and gutters, rather than to a specific housing unit, such as excavation of building foundations and preparation of compacted earthen pads, are not part of the "construction" of the unit. The French drains were designed specifically to protect the basement of petitioners' house, and were thus directly attributable to the new residence. There is little doubt that had they been completed after the house had been built, their installation would have constituted a part of its "construction," as opposed to mere "land preparation." We fail to see why a mere change in chronological order (prompted by practical considerations) should dictate a contrary result. We therefore hold that the construction of the new principal residence commenced before March 26, 1975.[2]

Respondent cities a District Court case, *Reddy v. United States,* 436 F. Supp. 377 (N.D. Ill. 1977), in support of his position. Because it is distinguishable on the facts, we find the case unpersuasive. In *Reddy,* plaintiffs owned a condominium in a building which was part of a large development. Prior to March 26, 1975, the streets, curbs, gutters, sewer system, and water system for the development had been completed. However, the work on the building in which plaintiff's condominium was

---

[2]It is a closer question whether the rock-laying constituted "construction" for purposes of sec. 44. We need not decide this issue as we hold that installation of the drains was part of such construction.

located was limited to merely clearing the land. The court held that construction had not commenced for purposes of section 44. By contrast, in the instant case, not only had the land been cleared, but a French drain system designed to protect the basement from flooding had been installed. Work of this nature is clearly more than "land preparation."

Due to concessions,

*Decision will be entered under Rule 155.*